Andrea L. Richard
State Bar No. 5-2848
THE RICHARD LAW FIRM, P.C.
P.O. Box 1245
290 E. Broadway, Suite 904
Jackson, Wyoming 83001
Tel. 307.732.6680
Fax 307.200.4280
andrea@arichardlaw.com
*Attorney for Plaintiff*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 DEC 23  AM 11: 09

MARGARET BOTKINS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **NICOLE MCKINNEY,** an individual, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. ____19-CV- 266 -J____ |
| **GRANITE PEAK FABRICATION, LLC,** a Wyoming limited liability company, **GRANITE PEAK INDUSTRIES, LLC,** a Wyoming limited liability company, **d/b/a GRANITE PEAK GROUP; GRANITE PEAK INDUSTRIES A, LLC**, a Wyoming limited liability company; **GRANITE PEAK INDUSTRIES B, LLC,** a Wyoming limited liability company; and **J. DOES 1-20,** | **COMPLAINT** **DEMAND FOR JURY TRIAL** |
| Defendants. | |

COMES NOW, Plaintiff Nicole McKinney, by and through her undersigned counsel, and

for her Complaint against Defendants Granite Peak Fabrication, LLC, Granite Peak Industries,

LLC, d/b/a Granite Peak Group, Granite Peak Industries A, LLC, Granite Peak Industries B,

LLC, and all affiliates and parent entities thereof, and J. Does 1-20, (collectively "Defendants" or "The Granite Peak Defendants"), respectfully states and alleges as follows:

## NATURE OF THE ACTION - OVERVIEW

1.      Plaintiff Nicole McKinney started working for the Granite Peak Defendants in July of 2017 as a welder at Granite Peak Fabrication in Casper, Wyoming.

2.      Ms. McKinney was a very good welder.

3.      However, while working as a welder for the Granite Peak Defendants, Ms. McKinney was harassed, assaulted, ridiculed, and demeaned by coworkers, supervisors, and other representatives of the Granite Peak Defendants.

4.      The Granite Peak Defendants discriminated against Ms. McKinney because of her gender, subjected her to a hostile work environment, sexually harassed her, and paid her less, all because of her gender.

5.      Despite receiving reports and requests for help from Ms. McKinney because of the sexual harassment and hostile work environment at Granite Peak Fabrication, the Granite Peak Defendants failed to take ANY corrective action.

6.      Instead of stopping the illegal and abusive behavior in their workplace, The Granite Peak Defendants allowed the sexual harassment and discrimination to continue, and actually refused to correct the hostile work environment.

7.      The Granite Peak Defendants created and condoned a hostile work environment and because of the Defendants' failure and refusal to act, Ms. McKinney was subjected to assault, discrimination, abuse, and severe and pervasive sexual harassment.

8.    Despite Ms. McKinney's reports and requests for help and despite the Granite Peak Defendants' knowledge of their hostile and abusive workplace, the Granite Peak Defendants took no action.

9.    Instead of addressing and correcting their abusive and hostile workplace, the Granite Peak Defendants began taking steps to force Ms. McKinney out of her job and retaliated against her for asking for help.

10.    After finding illegal drugs in their workplace in approximately May 2019, the Granite Peak Defendants asked employees in its fabrication facilities to submit to drug testing.

11.    Ms. McKinney spoke privately with her supervisors and raised concerns in connection with the drug testing.

12.    Although Ms. McKinney privately expressed concerns, she did not refuse to take the drug test.

13.    The Granite Peak Defendants told Ms. McKinney to go home but that she would be asked to come back to work shortly.

14.    Despite multiple contacts and requests that the Granite Peak Defendants keep their promise and return Ms. McKinney to her job, the Granite Peak Defendants refused to allow Ms. McKinney to return to her work. These and related actions by the Granite Peak Defendants were part of their efforts to retaliate against and remove Ms. McKinney,

15.    Instead of helping Ms. McKinney, the Granite Peak Defendants retaliated against Ms. McKinney for reporting the abuse and harassment and asking for help.

16.    The Granite Peak Defendants promised Ms. McKinney that she would be reinstated. However, because Ms. McKinney reported the hostile work environment and sexual

harassment directed towards her, the Granite Peak Defendants refused to reinstate Ms.

McKinney, retaliated against her and forced her out of her job.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and

1345.  This action is authorized and instituted pursuant to Section 16(c) and Section 17 of the

Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to

enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29

U.S.C. § 206(d), and pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil

Rights Act of 1991, 42 U.S.C. § 1981a.

18.     The Granite Peak Defendants employ more than 50 employees and are employers

within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.

(sometimes referred to as "Title VII").

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that

this case arises under federal law, specifically Title VII, the Due Process Clause of the 14th

Amendment to the United States Constitution and 42 U.S.C. § 1983.

20.     Venue is proper in the District of Wyoming pursuant to Section 706(f)(3) of Title

VII, 42 U.S.C. § 2000e-5(f)(3), because Defendants' unlawful actions, including Defendants'

unlawful retaliation, giving rise to Plaintiff's claims, occurred in this District.

21.     This Court has pendant jurisdiction over the state law claims contained herein.

22.     The employment practices alleged to be unlawful were committed within the

jurisdiction of the United States District Court for the District of Wyoming.

## PARTIES

23.     Plaintiff Nicole McKinney is an individual who lives in Casper, Wyoming.

24.     Granite Peak Fabrication is a Wyoming limited liability company, filing ID 2016-000707378, formed on February 24, 2016.  Granite Peak Fabrication, LLC's principal address is 1300 Venture Way, Suite 200, Casper, Wyoming 82609 and its mailing address is P.O. Box 51568, Casper, Wyoming 82605.  Joshua Jamison was the organizer and is the Registered Agent, 2291 Renauna Avenue, Casper, Wyoming 82601.

25.     Granite Peak Industries, LLC., is a Wyoming limited liability company, filing ID 2014-000668334, formed on July 14, 2014.  Granite Peak Industries, LLC's principal address is 1300 Venture Way, Suite 200, Casper, Wyoming 82601, and its mailing address is P.O. Box 51568, Casper, Wyoming 82601.  Michael Lansing was the organizer and the Registered Agent is Joshua Jamison, 2291 Renauna Avenue, Casper, Wyoming 82601.

26.     Granite Peak Group is a trade name of Granite Peak Industries, LLC, filing ID 2015-000686853, formed on May 14, 2015, with a mailing address of P.O. Box 51568, Casper, Wyoming.

27.     Granite Peak Industries A, LLC, is a Wyoming limited liability company, filing ID 2015-000686855, formed on May 14, 2015.  Granite Peak Industries A, LLC's principal and mailing address is 1300 Venture Way, Suite 200, Casper, Wyoming 82609.  Michael Lansing was the organizer and the Registered Agent is Joshua Jamison, 2291 Renauna Avenue, Casper, Wyoming 82601.

28.     Granite Peak Industries B, LLC, is a Wyoming limited liability company, filing ID 2015-000686857, formed on May 14, 2015.  Granite Peak Industries B, LLC's principal and mailing address is 1300 Venture Way, Suite 200, P.O. Box 51568, Casper, Wyoming 82609.

Michael Lansing was the organizer and the Registered Agent is Joshua Jamison, 1300 Venture Way, Suite 200, P.O. Box 51568, Casper, Wyoming 82609.

29.     Plaintiff is unable to determine the actual names and capacities of Defendant J. Does 1 - 20, inclusive, and therefore sues these Defendants by such fictitious names.  On information and belief, Plaintiff believes that each of the J. Doe Defendants may be liable for the causes of action set forth below or may be used to house or hide assets that should properly be available to pay the obligations and damages described herein.  Plaintiff reserves the right to amend this Complaint, and when the identities of the J. Doe Defendants have been ascertained and/or their operations and assets discovered, Plaintiff will seek leave to amend this Complaint to set forth their actual names and capacities.

## ADMINISTRATIVE PROCEDURES

30.     More than thirty (30) days prior to the institution of this lawsuit, Ms. Nicole McKinney filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and the Wyoming Department of Workforce Services, Fair Labor Standards, alleging violations of Title VII and the Equal Pay Act (EPA) and related discrimination by the Granite Peak Defendants.

31.     The EEOC provided the Granite Peak Defendants with notice of the charge.

32.     Over one hundred eighty (180) days after Plaintiff filed her charge, the U.S. Equal Employment Opportunity Commission issued a right to sue notice authorizing this lawsuit, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated by this reference.

## BACKGROUND FACTS

33.     Despite their obligation to do so, the Granite Peak Defendants do not appear to have a written policy prohibiting sexual harassment in its workplace.  This is the first serious

problem for the Granite Peak Defendants and a clear indication that the Granite Peak Defendants do not comply with federal law.

34.     By law, when the Granite Peak Defendants learned that their workplace[1] was a hostile work environment, they had an obligation to properly investigate and act to stop the harassment thereby protecting their employees.  Despite having a clear legal obligation to act, The Granite Peak Defendants did not act.  By not taking the legally required actions and failing to act time and time again, the Granite Peak Defendants effectively endorsed the sexual harassment that was directed towards Ms. McKinney in her workplace.

35.     **Unequal Pay.**  The Granite Peak Defendants routinely sent the message that they would not comply with federal law and would not stop the harassment directed at Ms. McKinney because of her gender.  The Granite Peak Defendants also endorsed the view that as a woman, Ms. McKinney was a less valuable member of their staff by paying Ms. McKinney considerably less than her male co-workers.

36.     Specifically, Ms. McKinney was paid a per hour rate at Granite Peak Fabrication that was less than her male counterparts were paid for the same work.  Even though Ms. McKinney received a pay raise in recognition of her excellent welding skills, her pay was still less than her male co-workers were making for the same work.

37.     Further, when Ms. McKinney was moved to nights, and she received the three dollar per hour increase differential for working nights, she still made less than most, if not all, of her male co-workers.  Over and over again, Ms. McKinney did the same work and was paid less because of her gender.

38.     **The Granite Peak Defendants' Excuses.**  The Granite Peak Defendants attempt to rely on primarily three excuses for their failure fulfill their obligations under Title VII.  First,

---

[1] Including the workplace at Granite Peak Fabrication.

The Granite Peak Defendants claim that they were entitled to dismiss Ms. McKinney for refusing

to take a mandatory drug test.  Second, The Granite Peak Defendants criticize Ms. McKinney's

abilities as a welder.  And last, the Granite Peak Defendants attempt to excuse their failures by

claiming that Ms. McKinney did not report the hostile work environment and sexual harassment.

In the end, the Granite Peak Defendants' excuses actually underscore the Granite Peak

Defendants' refusal to comply with their legal obligations under Title VII to create and maintain

a workplace where employees are free from harassment, discrimination and abuse.

39.   **Severe and Pervasive.**  There is no reasonable basis for denying that while

employed by The Granite Peak Defendants, Ms. McKinney was subjected to severe and

pervasive sexual harassment.  As but one example, while at work on her shift, a The Granite

Peak Defendants' employee smacked Ms. McKinney on her behind, then picked her up, threw

her over his shoulder and took her over to the trash can and threw her in the trash.  This is not a

figurative statement--it happened literally and actually.  These were, in fact, the actions of a The

Granite Peak Defendants' employee in their workplace.  Ms. McKinney reported this to Rick

Walker and Dereck Wilson.  Once again, The Granite Peak Defendants took no action and the

behavior continued.

40.   **Humiliating and Harassing Material Sent to Ms. McKinney.**  Not only was

Ms. McKinney subjected to hostile, abusive, and harassing conduct during her shift, but she was

also subjected to harassment beyond her shift.  The Granite Peak Defendants' employees sent

Ms. McKinney numerous foul and nasty messages.  Ms. McKinney reported the harassment and

the hostile work environment at Granite Peak Fabrication again and again.  Because The Granite

Peak Defendants chose not to take action, the harassment and abuse towards Ms. McKinney

continued.  Because The Granite Peak Defendants disregarded their legal responsibilities to

prevent and stop sexual harassment, Ms. McKinney had to endure pervasive harassment and abuse in her workplace.

41.     **Again and Again, The Granite Peak Defendants Refuse to Act**.  The repeated instances of workplace abuse and humiliation towards Ms. McKinney were never addressed by the Granite Peak Defendants.  Ms. McKinney experienced egregious and pervasive harassment and the Granite Peak Defendants disregarded their legal obligation to stop the behavior.  In the end, by failing to action over and over again, the Granite Peak Defendants essentially endorsed a hostile work environment.

42.     **Ms. McKinney's Repeated Reports and Requests for Help**.  Ms. McKinney's immediate supervisor was Dave Fountain.  On numerous occasions, Ms. McKinney reported the sexual harassment and hostile work environment at Granite Peak Fabrication to Mr. Fountain.  While acting for the Granite Peak Defendants, Mr. Fountain failed to act and did not work to stop the harassing behavior and actions towards Ms. McKinney.

43.     **Humiliating and Degrading Comments Were the Rule**.  When Jay Fountain, Dave Fountain's brother was hired, his starting wage was $22 an hour.  Jay Fountain learned that because of her superior welding skills and her certification as a code welder, Ms. McKinney was making $26 an hour.  Mr. Fountain commented that Ms. McKinney was only making more money because she has "tits and ass."

44.     **In Response to Ms. McKinney's Numerous Requests for Help, The Granite Peak Defendants Direct Ms. McKinney to "Brush Aside" the Illegal and Discriminatory Behavior Directed at Her**.  Ms. McKinney reported Mr. Fountain's comments to her supervisors and, as they had done on past occasions, the Granite Peak Defendants' representatives told Ms. McKinney to simply "brush aside" the behavior.  The Granite Peak

Defendants' response to reported sexual harassment and hostile work environment clearly demonstrate The Granite Peak Defendants' discriminatory workplace and their endorsement of the same.

45.    **Ms. McKinney's Immediate Supervisor.**  To make matters worse, and even though Mr. Fountain was Ms. McKinney's immediate supervisor, Mr. Fountain often participated in and contributed to the harassment.  Mr. Fountain himself directed humiliating and degrading comments to Ms. McKinney, including at one point asking Ms. McKinney if she "was on her fucking rag."

46.    Instead of taking effective steps that would stop the pervasive harassment, the Granite Peak Defendants' choices subjected Ms. McKinney to continuing harassment and discrimination.   The Granite Peak Defendants failed to investigate, failed to take any action to stop or prevent further harassment, and failed to impose any discipline.

47.    The Granite Peak Defendants' choices demonstrate its culture and its willingness to overlook its obligation to create and maintain a legally compliant work environment.  The Granite Peak Defendants sent a crystal-clear message to their employees and customers--Granite Peak Fabrication, and its affiliates and parent entities, tolerate and even reward sexual harassment and discrimination.

48.    **The Granite Peak Defendants' Prior Notice.**  Upon information and belief, when the Granite Peak Defendants had an operation in Evansville (operating as Granite Peak Fuel Service), a claim involving sexual harassment was made.  Despite this, the Granite Peak Defendants have continued to disregard their legal obligation to prevent sexual harassment in the workplace.

49.    **The Granite Peak Defendants' Lack of Written Policies.**  Despite clear legal requirements that they do so, the Granite Peak Defendants do not appear to have any effective policies prohibiting sexual harassment or hostile work environment.  The Granite Peak Defendants provide no sexual harassment training to their employees.  The Granite Peak Defendants took no action to prevent or stop sexual harassment and discrimination in their workplace.  As a result, The Granite Peak Defendants are strictly liable for the harassment and discrimination in their workplace.

**FACTS**

**Severe and Pervasive Sexual Harassment and Granite Peak's Hostile Work Environment**

50.    _July 2017_.  Ms. McKinney starts her employment at Granite Peak Fabrication. She is a very good welder.  She is also the only female.

**Physical Touching and Assaults**

51.    _Summer of 2017_.  Almost from the beginning, Ms. McKinney is subjected to physical touching and physical assaults.

a.    Ms. McKinney is walking through the Granite Peak Fabrication shop.  As she walks to her workstation/next project, she is slapped and smacked on her back-side by multiple co-workers.

b.    Ms. McKinney is assigned to work inside a large metal vessel.  She must crawl into the vessel and work on her knees.  While she is welding in the vessel, co-workers stick a broom between her legs, in a sexually suggestive fashion.

c.    Co-workers routinely and repeatedly pull Ms. McKinney's hair while she is at work.

d.      Ms. McKinney is assigned to use a ladder while welding.  While she is on

the ladder working and welding, multiple co-workers grab her leg or her thigh.

e.      One co-worker routinely threatens Ms. McKinney when she refuses his

advances.  The co-worker tells her she is "a worthless whore" and "should go kill

herself."

**Demeaning and Hostile Comments by Her Manager**

52.     Dave Fountain becomes angry at Ms. McKinney.  Dave yells at Ms. McKinney

"what's wrong—on your fucking rag, or what?!?"

**Verbal Attacks**.

53.     Inappropriate comments to Ms. McKinney take place on a daily basis.  She is

routinely told that she "has a nice ass."  Co-workers greet Ms. McKinney by saying "hey sexy."

**When Granite Peak's Manager Witnesses the Harassment, He Buries His Head and Takes
No Action**.

54.     When Dereck Wilson witnesses the verbal and physical assaults of Ms.

McKinney, he looks away or looks down and takes no action to prevent the assaults.

55.     **Failure to Investigate.**  After receiving Ms. McKinney's requests for help and

reports of illegal sexual harassment in its workplace, the Granite Peak Defendants failed to

conduct an investigation and failed to take any other meaningful action to address its hostile and

abusive work environment.

56.     **The Granite Peak Defendants' Restrictions on Reporting.**  Rather than

establish a reporting structure , the Granite Peak Defendants discouraged employees from

reporting problems in the workplace.  Ms. McKinney's immediate supervisor told Ms.

McKinney not to go to HR for anything and that instead, she should come to him first.  Thus,

The Granite Peak Defendants' policy was to discourage reporting.

57.     **The Granite Peak Defendants Restrict Access to the HR Office.**  In addition to telling Ms. McKinney not to report anything to HR, the Granite Peak Defendants also maintained physical impediments to reporting.  The HR Office at Granite Peak Fabrication was upstairs, locked and a key card was required to gain entry.

58.     Numerous employees, including Ms. McKinney, would attempt to reach the Granite Peak Defendants' HR representative.  The HR representative was very rarely in her office and the Granite Peak Defendants' HR representative would not respond to emails or phone calls.  The Granite Peak Defendants' HR representative would not make herself available to concerns from the Granite Peak Defendants' night shift employees.  Ms. McKinney sought help over and over and availed herself of every conceivable reporting avenue.  Even then, the Granite Peak Defendants took no action.

59.     **Reporting Mechanism.**  Despite the express legal requirement that the Granite Peak Defendants have a reporting mechanism so that employees like Ms. McKinney can seek help, the Granite Peak Defendants do not have any place to report or get help.

60.     The Granite Peak Defendants supposedly have a Human Resources Department.  However, it quickly becomes clear that the HR employee is overwhelmed and unavailable and there is no avenue for reporting or getting help at the Granite Peak Defendants' workplaces.

61.     Ms. McKinney goes to the HR office on more than one occasion to report.  However, the HR employee is not in her office.  Ms. McKinney leaves the HR employee voicemails, reporting the conduct towards her.  The HR representative for the Granite Peak Defendants does not respond or acknowledge Ms. McKinney's reports.

62.     Ms. McKinney was subjected to discrimination, harassment, and a hostile work environment while she worked for the Granite Peak Defendants.  Ms. McKinney reported the

illegal behavior.  However, the Granite Peak Defendants did not investigate, did not act or take any action to stop the discrimination and illegal behavior.  The Granite Peak Defendants' representatives continue to harass and abuse Ms. McKinney, ultimately forcing her out and constructively discharging her.  The Granite Peak Defendants also retaliated against Ms. McKinney for reporting and asking for help.

63.     Ms. McKinney's supervisors did not follow the law and did not take any steps to protect their employees from sexual harassment and the hostile work environment.  Rather than addressing or trying to stop the hostile and discriminatory environment in the Granite Peak Defendants' workplace, the Granite Peak Defendants enabled, and thereby encouraged, the illegal behavior.

64.     **The Granite Peak Defendants Discourage Effective Reporting.**  On several occasions, Ms. McKinney's direct supervisor told her that she was not allowed to go to HR.  Instead, Mr. Fountain insisted that Ms. McKinney meet with him rather than reporting any concerns about the sexually hostile and abusive work environment to the human resources department.

65.     The harassment, abusive treatment and discrimination directed at Ms. McKinney continued and worsened.  In the end, the Granite Peak Defendants and their employees made the working conditions severe, abusive, and unbearable.

66.     **Ms. McKinney's Co-workers Express Concern.**  Several of Ms. McKinney's coworkers were concerned because a co-worker was screaming at her loudly during shifts.  Ms. McKinney reported this problem and time and time again, the Granite Peak Defendants took no action.

67.     This co-worker would continually harass and bug Ms. McKinney.  She reported the problem to her immediate supervisor, who took no action.

68.     The harassment and inappropriate behavior by the co-worker continued.  Ms. McKinney asked for help from another supervisor.

69.     Ultimately, the second supervisor, had the harasser come into his office and told him to stop harassing Ms. McKinney.  However, the Granite Peak Defendants and the supervisor's words were hollow.  Not only did the co-worker continue his harassing and inappropriate behavior, but the Granite Peak Defendants allowed the co-worker to follow Ms. McKinney to the night shift.  When Ms. McKinney sought help and reported further behavior by the co-worker, again the Granite Peak Defendants took no effective action.  In fact, Ms. McKinney's immediate supervisor told Ms. McKinney that the co-worker has "gotta work too."

70.     Thus, the Granite Peak Defendants allowed one of the harassers to continue to harass Ms. McKinney.  Granite Peak refused to take its obligation to create and maintain a legally complaint work environment seriously.

71.     **The Granite Peak Defendants' Retaliation**.  After Ms. McKinney expressed concerns in connection with the drug test, her supervisor told Ms. McKinney not to worry about taking the urine test and to go home for the day.  Ms. McKinney followed his instructions.  Ms. McKinney did not refuse to take the drug test.

72.     After she left for the day as per her supervisor's instructions, Ms. McKinney inquired about getting back to work.  Ms. McKinney was then told that she would be eligible for reinstatement and could apply for reinstatement later.  However, when Ms. McKinney did apply for reinstatement, the Granite Peak Defendants told her she was not eligible for reinstatement and the Granite Peak Defendants refused to reinstate her.  The Granite Peak Defendants'

decision not to reinstate Ms. McKinney after making promises that she would have her job back was retaliation.

73.    **Retaliation.** Ms. McKinney has obviously been subjected to retaliation. Simply put, the more she reported, the worse the conditions became. The privileges and conditions of her employment were negatively impacted and her workplace became even more hostile as she requested help.

74.    **Impact on Ms. McKinney.** Ms. McKinney has truly been through a nightmare at the hands of the Granite Peak Fabrication and the other The Granite Peak Defendants. Because the abuse and hostile work environment remained callously unchecked, Ms. McKinney suffered extreme anxiety, mental distress, physical manifestations of extreme stress, and related effects.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF – TITLE VII SEVERE AND PERVASIVE SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT – 42 U.S.C. § 2000(e)-2(a)

75.    The allegations contained in the foregoing paragraphs are incorporated by reference.

76.    Since Ms. McKinney was hired by the Granite Peak Defendants in June of 2017, the Granite Peak Defendants have engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a), by engaging in severe and pervasive sexual harassment and creating an abusive work environment .

77.    Ms. McKinney belongs to a protected category under Title VII.

78.    The Granite Peak Defendants subjected Ms. McKinney to unwelcome conduct including severe and pervasive sexual harassment and an abusive working environment.

79.    The conduct that the Granite Peak Defendants directed at Ms. McKinney was based on Ms. McKinney's protected category.

80.     Ms. McKinney subjectively viewed the harassment as creating an abusive work environment and a "reasonable" person would also objectively view the work environment as abusive.

81.     The effects of the Defendants' practices described above, have been to deprive Ms. McKinney of equal employment opportunities and otherwise adversely affect her employment status because of her sex, female.

82.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. McKinney.

83.     As a direct and proximate result of the Granite Peak Defendants' actions and inactions, Ms. McKinney has suffered, and will continue to suffer, pain and suffering, and extreme and severe mental anguish and emotional distress, and she has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. McKinney is thereby entitled to general and compensatory damages in amounts to be proven at trial.

84.     As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. McKinney has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF – TITLE VII COMPENSATION DISCRIMINATION –
42 U.S.C. § 2000(e)-2(a)**

85.     The allegations contained in the foregoing paragraphs are incorporated by this

reference.

86.     Since Ms. McKinney was hired by the Granite Peak Defendants in July of 2017,

the Granite Peak Defendants have engaged in unlawful employment practices in violation of

Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a), by discriminating against female welders

with respect to compensation, and Ms. McKinney in particular, as she was the only female

welder at her location.

87.     Ms. McKinney occupied the same position as other, male, welders, who were paid

at a higher rate.

88.     The effects of the practices described above have been to deprive Ms. McKinney

of equal employment opportunities and otherwise adversely affect her employment status

because of her sex, female.

89.     The unlawful employment practices complained of above were intentional.

90.     The unlawful employment practices complained of above were done with malice

or with reckless indifference to the federally protected rights of Ms. McKinney.

91.     As a direct and proximate result of the Granite Peak Defendants actions and

inactions, Ms. McKinney has suffered, and will continue to suffer, pain and suffering and

extreme and severe mental anguish and emotional distress; Ms. McKinney has suffered, and will

continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms.

McKinney is thereby entitled to general and compensatory damages in amounts to be proven at

trial.

92.     As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. McKinney has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF – VIOLATION OF THE EQUAL PAY ACT – 29 U.S.C. §§ 206(d)(1) & 215(a)(2)

93.     The allegations contained in the foregoing paragraphs are incorporated by reference.

94.     Since July of 2017, the Granite Peak Defendants have violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) & 215(a)(2), by paying female welders wages at a rate less than the rate at which male welders are paid.

95.     At all relevant times, female welder Ms. McKinney, while employed by the Granite Peak Defendants, performed work substantially equal to that of male welders, considering the skills, effort, and responsibilities of the job.  At all relevant times, female welder Ms. McKinney worked under conditions similar to male welders, except that Ms. McKinney was subjected to an extremely hostile work environment, as addressed below.

96.     At all relevant times, the Granite Peak Defendants paid Ms. McKinney at lower rates than her male counterparts.

97.     As a result of the acts complained above, the Granite Peak Defendants unlawfully withheld and are continuing to withhold payment of wages due to Ms. McKinney.

98.     The unlawful practices complained of above were and are willful.

99.     As a direct and proximate result of the Granite Peak Defendants actions and inactions, Ms. McKinney has suffered, and will continue to suffer, pain and suffering and

extreme and severe mental anguish and emotional distress; Ms. McKinney has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities. Ms. McKinney is thereby entitled to general and compensatory damages in amounts to be proven at trial.

100.     As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. McKinney has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF – RETALIATION AND/OR CONSTRUCTIVE DISCHARGE BECAUSE OF SEX – 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a)

101.     The allegations contained in the foregoing paragraphs are incorporated by reference.

102.     In Ms. McKinney's case, beginning on or about July of 2017, the Granite Peak Defendants engaged in unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against and constructively discharging Ms. McKinney because of her sex.

103.     By asking her supervisors and manger for help and by asking them to address and stop the hostile work environment and sexual harassment, Ms. McKinney engaged in protected activity and opposition to discrimination.

104.     After Ms. McKinney would report the abusive and hostile work environment and ask for help, the hostile work environment and harassment would continue and become worse. The Granite Peak Defendants through their representatives and otherwise would take materially

adverse action towards Ms. McKinney by making the work environment increasingly hostile and abusive.

105.   There was a causal connection between Ms. McKinney's protected activity and opposition to the discrimination and the materially adverse action and escalating hostile work environment and harassment.

106.   The harassing and abusive actions by the Granite Peak Defendants continued to escalate.  In response to Ms. McKinney's reports, the hostile environment and sexual harassment worsened.

107.   At the time she was forced out and kept out of her job, Ms. McKinney was performing her work in a satisfactory manner.

108.   Because the Granite Peak Defendants failed to respond to employee reports of pay discrimination based on sex, hostile work environment, harassment, and other conditions of employment, the working conditions became increasingly intolerable.

109.   The retaliation and work conditions at the Granite Peak Defendants' location in Casper were sufficiently intolerable that a reasonable employee would have experienced them as retaliation.

110.   The unlawful employment practices described above were intentional.

111.   The unlawful employment practices of the Granite Peak Defendants complained of herein were done with malice or with reckless indifference to the federally protected rights of Ms. McKinney.

112.   As a direct and proximate result of the Granite Peak Defendants' actions and inactions, Ms. McKinney has suffered, and will continue to suffer, pain and suffering and extreme and severe mental anguish and emotional distress; Ms. McKinney has suffered, and will

continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms.

McKinney is thereby entitled to general and compensatory damages in amounts to be proven at

trial.

113.    As a further direct and proximate result of the Defendants' violation of her rights

to due process, Ms. McKinney has been compelled to retain the services of counsel in an effort

to enforce the terms and conditions of the employment relationship with defendants and has

thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that

attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF- ALTER EGO AND/OR PIERCING THE CORPORATE VEIL

114.    Plaintiff incorporates herein the allegations contained in the foregoing paragraphs

of this Complaint by reference as if set forth fully herein.

115.    Upon information and belief, some or all of the Defendant entities set forth above

influences and governs the Granite Peak Defendant entities and John Does 1-20, such that they

are their alter ego.

116.    Upon information and belief, there is a unity of interest and ownership between

the Defendants set forth above and John Does 1-20, and/or the Granite Peak Defendants such

that the Granite Peak Defendant corporations and entities are inseparable from one another.

117.    The facts as alleged herein are such that adherence to the corporate fiction of

separate entities for the Granite Peak Defendants and John Does 1-20 under the circumstances

would sanction a fraud, bring about an inequitable result, or promote injustice.

118.    Upon information and belief, Plaintiff should be permitted to pierce the corporate

veil and obtain a judgment against the individual shareholders even when the harm may have

arisen from a dispute or harm by one of the Granite Peak Defendant corporate entities.

119.    Upon information and belief, there is such unity of interest and ownership that the separate personalities of the Granite Peak Defendant entities and corporations and the Defendant entities described above and/or the John Doe Defendants no longer exist.

120.    Upon information and belief, the Defendants described above and the Granite Peak Defendants comingled assets, training, processes, and management among the entities to the extent that no separation exists.

121.    Plaintiff Nicole McKinney was damaged by Defendants' misconduct in an amount greater than and beyond its actual and contract-related damages to be proven at trial.

## SIXTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION

122.    Plaintiff incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

123.    Among other representations, the Granite Peak Defendants represented to Plaintiff that they would pay her fairly and treat her the same as her male counterparts.

124.    The Granite Peak Defendants made numerous representations to Ms. McKinney, including, but not limited to, representations that they would provide a workplace in which women were treated fairly, had equal access to facilities and opportunities, and were paid similarly to their male counterparts.

125.    The Granite Peak Defendants made numerous representations to Ms. McKinney regarding their policies and commitment to ensuring a fair work environment and policies against sexual harassment and hostile work environment.

126.    Among other representations, the Granite Peak Defendants' representations that they would pay men and women equally, were not true.

127. The Granite Peak Defendants failed to use reasonable care to determine whether the representations were true. Not only did the Granite Peak Defendants fail to use reasonable care to determine whether the representations were true, the Granite Peak Defendants also failed to inform Plaintiff in a timely fashion when they had knowledge that their representations were not true. The Granite Peak Defendants engaged in these and other negligent misrepresentations in order to obtain as much work from Ms. McKinney without having to pay for it, and without having to provide Ms. McKinney, and the other women in the workplace, with the same facilities benefiting their male counterparts.

128. The Granite Peak Defendants were in a better position than Plaintiff to know the true facts of their representations, including, but not limited to, whether or not they would provide a workplace that was free from sexual harassment and hostile behavior, had the money to pay Plaintiff or the ability to provide the equivalent facilities promised.

129. The Granite Peak Defendants had a financial interest in the work Ms. McKinney performed.

130. Plaintiff Nicole McKinney relied on the representations of the Granite Peak Defendants and it was reasonable for her to do so.

131. Plaintiff Nicole McKinney suffered damage as a result of relying on the Granite Peak Defendants' representations.

132. Ms. McKinney was damaged by Defendants' misconduct in an amount greater than and beyond her actual loss of pay damages, in an amount to be proven at trial.

133. The conduct of Defendants was willful and wanton, justifying the award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nicole McKinney respectfully prays to this Court for the following:

A.      On Ms. McKinney's claims for Title VII Compensation Discrimination and Violation of the Equal Pay Act, for a judgment ordering specific performance by the Granite Peak Defendants, and for a judgment against Defendants and in favor of Ms. McKinney for all of Ms. McKinney's direct and consequential damages (back pay) in an amount to be proven at trial, plus interest; and

B.      On Ms. McKinney's claim for Retaliation and Constructive Discharge Because of Sex, for a judgment ordering specific performance by the Granite Peak Defendants, and for a judgment against Defendants and in favor of Ms. McKinney for all of Ms. McKinney's direct and consequential damages, including all lost future wages and damages, in an amount to be determined by a jury, plus interest; and

C.      On Ms. McKinney's claim for Alter Ego and/or Piercing the Corporate Veil, for a judgment against Defendants finding that the Granite Peak Defendants and John Does 1-20 are undercapitalized entities which are merely the alter egos of the primary owners and that by the use of said alter egos the Granite Peak Defendants sought to shirk their responsibilities to their employees, thereby damaging and harming Ms. McKinney in an amount to be proven at trial, as well as punitive damages in an amount sufficient to punish Defendants and to deter future conduct like that exhibited by Defendants, such that other persons will be deterred from such conduct as well as the Defendants; and

D.      On Ms. McKinney's claim for Negligent Misrepresentation, for a judgment against the Granite Peak Defendants and in favor of Ms. McKinney for all of Ms. McKinney's direct and consequential damages in an amount to be determined by a jury, plus interest; and for

findings and judgment that the Granite Peak Defendants made negligent misrepresentations to Ms. McKinney and that Ms. McKinney was damaged by Defendants' misconduct in an amount greater than and beyond her actual and loss-of-pay damages to be proven at trial, as well as punitive damages in an amount sufficient to punish Defendants and to deter future conduct like that exhibited by Defendants, such that other persons will be deterred from such conduct as well as the Defendants; and

E.     Order the Granite Peak Defendants to pay Ms. McKinney punitive damages for their malicious conduct or reckless indifference to Ms. McKinney's federally protected rights, as described above, in amounts to be determined at trial; and

F.     On all her claims, award Ms. McKinney compensatory damages, back pay, and front in amount to be determined by the jury; and

G.     Grant injunctive relief; and

H.     Award attorney and expert witness fees as allowed by statute; and

I.     Award pre-judgment interest at the maximum legal rate; and

J.     Award interest on the judgment at the maximum legal rate; and

K.     Award costs of suit herein; and

L.     Grant such further relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff, by and through her counsel, pursuant to Federal Rule of Civil Procedure 38, hereby requests that this matter be tried to a jury of six.

RESPECTFULLY SUBMITTED this 19th day of December, 2019.

THE RICHARD LAW FIRM, P.C.

Andrea L. Richard
Wyoming State Bar No. 5-2848
P.O. Box 1245
290 E. Broadway, Suite 904
Jackson, Wyoming 83001
Tel. 307.732.6680
Fax 307.200.4280
andrea@arichardlaw.com

*Attorney for Plaintiff*

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Nicole L. McKinney<br>P.O. Box 51666<br>Casper, WY 82605 | From: Denver Field Office<br>303 East 17th Avenue<br>Suite 410<br>Denver, CO 80203 |
|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32K-2019-00109 | **Philip Gross,**<br>**Supervisory Investigator** | **(303) 866-1318** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Amy Burkholder,**
*(for)* **Director**

9/30/19

*(Date Mailed)*

Enclosures(s)

cc:
**Martha I. Tate**
Crank Legal Group
1815 Evans Avenue
Cheyenne, WY 82001

**Andrea Richard, Esq.**
THE RICHARD LAW FIRM, P.C.
P.O. Box 1245
Jackson, WY 83001

PLAINTIFF'S EXHIBIT